RENDERED: SEPTEMBER 15, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1142-MR

D.M., PARENT; JANE DOE; AND                                    APPELLANTS
T.M., PARENT

APPEAL FROM MCCRACKEN CIRCUIT COURT
v.          HONORABLE TIMOTHY KALTENBACH, JUDGE
ACTION NO. 20-CI-00125

MCCRACKEN COUNTY SCHOOL
DISTRICT AND BOARD OF
EDUCATION; BRIAN BOWLAND;
BRIAN HARPER; ELAINE KAYE;
JEREMY WATWOOD; MOLLY
GOODMAN; STEPHANIE CARTER;
WENDY WATTS; AND WILLIAM
MICHAEL CEGLINSKI                                              APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; EASTON AND KAREM, JUDGES.

KAREM, JUDGE:  Appellants appeal from the McCracken Circuit Court's grant

of summary judgment to the Appellees based on qualified immunity for

discretionary acts during an investigation of Appellant Jane Doe's report of sexual abuse by another student. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2019, Jane Doe was a seventeen-year-old McCracken County High School ("MCHS") student. On February 6, 2019, Princekumar Joshi, Doe's eighteen-year-old classmate, drove Doe to a Paducah Rotary Club meeting in Joshi's vehicle. MCHS faculty had selected Joshi and Doe to represent the school at the meeting, and Doe's parents consented to her riding with Joshi.

After the meeting, and on their way back to school, Doe alleged that Joshi threatened to disclose an embarrassing secret about Doe unless she engaged with him in sexual activity. Ultimately, the pair went to Joshi's sister's apartment and engaged in oral sex while Joshi recorded the act on his cell phone. Doe and Joshi then returned to school.

On February 11 or 12, 2019, Stephanie Carter, an MCHS teacher, overheard conversations between Doe and some other students. Specifically, Doe discussed with another student that Joshi had made her uncomfortable during the ride to the Rotary Club meeting and that she was reluctant to ride with him again. In response, the female student suggested that Doe not ride with Joshi and described him as "rapey." Another female student stated that her friend had a bad experience with Joshi at a party. When Carter questioned Doe, Doe did not reveal

-2-

anything about the February 6, 2019 events. However, Carter met with Doe and the other female student later in the day and told Doe that she would reach out to the administration for assistance with Doe's and the other students' concerns.

On Thursday, February 14, 2019, Carter contacted Holly Miller, an MCHS guidance counselor, and asked her to join Carter in speaking with Joshi regarding his conduct. On Friday, February 15, 2019, Miller indicated to Carter that she would be out of the office and unable to assist Carter in speaking with Joshi.

Carter spoke with Molly Goodman, an MCHS assistant principal, afterward about the situation. Jeremy Watwood, an MCHS guidance counselor, also joined the conversation. Carter also informed them that Doe was one of the girls who had expressed concern about Joshi, but that Doe was adamant that she not be named as an accuser.

Later that day, Doe met with Watwood and another MCHS guidance counselor, Wendy Watts. The counselors asked Doe to recount what had happened on the way home from the Rotary Club meeting. They also requested that Doe write a statement describing her allegations. Specifically, Doe stated the following:

> On the way to Rotary Club, Prince and I were cordial to each other. He had previously texted me and asked if I would like to ride with him. On the way back to school he mentioned if I wanted to go to his house or the school

to perform oral sex. I was shocked and got really quiet and leaned to the other side of the car. He proceeded to ask me what was wrong and I said that I do not want to do anything and I have a vocab test in my vet science class that I need to go do. He said that we needed to focus on having fun. He said that if I tell his girlfriend or anything he will tell everyone the secret that he knows about me. He asked, "why did you wear those pants, they are too hard to get into." I chose the apartment and we proceeded to go there. He tried to grab my hand to put on his pants but I jerked my hand away. He mentioned that I was playing hard to get. We walked into his apartment (because his sister and mom were out of the country). While I was performing oral he took two videos of me. After we were finished, I went to the bathroom to clean myself up and try not to cry.

[. . .]

He said that we shouldn't do that anymore and reminded me of the blackmail he had against me.

[. . .]

I [direct messaged] him and asked him to delete the video and he said that he already had but wanted to know why. I said that the whole thing made me uncomfy and he said he understood.

[. . .]

Ever since, I have been having nightmares and flashbacks.

Watwood informed Goodman that they obtained Doe's statement, which she came to Watwood's office to read. Additionally, Goodman asked Doe if she consented to the sexual activity with Joshi, and she said no. Doe also

-4-

requested at the meeting that Watts and Watwood not inform her parents about the situation. The record indicates that after Doe left the meeting, Watts, Watwood, and Goodman were uncertain whether they were handling a discipline issue because of two seniors skipping school or something that they needed to report to law enforcement.

After Goodman reviewed Doe's statement, she contacted Michael Ceglinski, the MCHS Head Principal, and Elaine Kaye, an Assistant Principal. After discussing the situation, Ceglinski recommended that Goodman get a statement from Joshi. Goodman and Kaye interviewed and obtained a written statement from Joshi. Joshi acknowledged that he and Doe went to his sister's apartment but stated that Doe had consented to driving to his sister's apartment and engaging in sexual activity. While Joshi admitted to having taken two videos, he said that he obtained Doe's consent but had already deleted them out of guilt.

School officials placed Joshi in detention for the remainder of the day so that he could not discuss the situation with other students. Because school was not in session the following Monday due to a holiday, school officials informed Joshi that he was to return to detention on Tuesday until they decided on the appropriate course of action.

After meeting with Joshi, Goodman called Ceglinski again, and he suggested that Goodman consult Brian Bowland, the MCHS Director of Pupil

Personnel, about potentially handling the situation as a disciplinary matter. Goodman did so, and Bowland suggested that Goodman talk to Doe again to ensure that Joshi had not forced her to do anything she did not want. Kaye brought Doe to her office, where Goodman was also present. Kaye asked if the sex act was non-consensual, and Doe stated it was consensual.

Doe then asked what would happen if she said it was consensual and what would happen if she said it was non-consensual. Kaye explained that school officials would report the situation to law enforcement if the act was non-consensual. If consensual, there could be disciplinary action against Doe and Joshi for skipping school. Thereafter, Doe stated, "So for me telling the truth about what happened, I'm going to be punished?" Kaye explained that they had yet to determine how to resolve the situation and would discuss the issue further upon returning to school the following Tuesday.

The school day on Friday, February 15, 2019, was cut short due to inclement weather. Thus, the last thing school officials heard from Doe that Friday afternoon was that the sex act had been consensual. No decision was made as to whether there would be punishment for Doe skipping school.

On Sunday, February 17, 2019, Doe informed her parents of the situation. Her parents notified the police, who immediately opened an investigation and interviewed Doe and her parents. On Monday, February 18,

-6-

2019, the Sheriff's Department interviewed Goodman regarding Doe's report. Goodman thereafter contacted Bowland to tell him that detectives had come to her apartment to inquire about the incident. Bowland contacted the superintendent, Brian Harper, to inform him that the Sheriff's Department had been to at least one employee's home regarding a possible discipline matter from the past Friday regarding a situation that had occurred off-campus.

On February 19, 2019, the McCracken County Sheriff's Department arrested Joshi on criminal charges of using a minor in a sexual performance, tampering with physical evidence, and sexual misconduct. On June 28, 2019, Joshi entered a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). He pled to the charges of tampering with physical evidence in violation of Kentucky Revised Statute ("KRS") 524.100, a felony, and to sexual misconduct in violation of KRS 510.140, a misdemeanor. In September 2019, the court sentenced Joshi to two-years' imprisonment for tampering with physical evidence and 180 days imprisonment for misdemeanor sexual misconduct, to be served concurrently.

Doe's parents subsequently filed a complaint against the McCracken County School District and Board of Education, Ceglinski, Bowland, Harper, Carter, Watwood, Watts, Goodman, and Kaye individually. The complaint alleged, in applicable part, that the Appellees conducted a bad faith investigation of

Doe's sexual abuse allegations and acted in bad faith in failing to report Doe's allegations. The complaint further alleged that Appellees bullied and threatened Doe with detention to intimidate her and to protect the school system's public image.

The Appellees moved for summary judgment, asserting the defenses of governmental and qualified immunity. The circuit court granted the motions for summary judgment and dismissed the complaint. This appeal followed.

We will discuss more facts as they become relevant.

**ANALYSIS**

As a preliminary matter, we first address the Appellees' motion to issue an order of deficiency, strike the Appellants' brief and dismiss the appeal based upon deficiencies in their brief under Kentucky Rules of Appellate Procedure ("RAP") 32(A)(3). An appellant's brief must contain "[a] statement of the case consisting of a summary of the facts and procedural events relevant and necessary to an understanding of the issues presented by the appeal, with ample references to the specific location in the record supporting each of the statements contained in the summary." RAP 32(A)(3). We agree with the Appellees that significant portions of the Appellants' brief contain factual allegations without citation to the designated record on appeal. Moreover, several factual assertions

cite recordings or documents that were not entered into the record, such as interviews with the McCracken Sheriff's Department.

When an appellant fails to adhere to the procedural rules, we may 1) ignore the deficiency and proceed with the review, 2) strike the brief or its offending portions, or, if the briefing defect relates to failure to include a statement concerning preservation of error, 3) review the issues raised in the brief for manifest injustice only. *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010). *See also Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021).

In this case, we choose to proceed with a review of the substantive issues. Still, we will not consider any factual assertions that do not contain citations to the record or contain citations to materials not included in the designated appeal record. *See* RAP 25(B). Thus, we DENY by separate order Appellees' motion to issue an order of deficiency and strike the Appellants' brief.

### a. Standard of Review

Summary judgments are significant for those seeking immunity, "as the defense renders one immune not just from liability, but also from suit itself." *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010) (citing *Rowan County v. Sloas*, 201 S.W.3d 469, 474 (Ky. 2006)). On appeal, we review a school official's entitlement to qualified official immunity *de novo*. *Ritchie v. Turner*, 559 S.W.3d 822, 830 (Ky. 2018).

Specifically, under Kentucky Rule of Civil Procedure ("CR") 56.03, summary judgment is suitable when the record reflects "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Indeed, summary judgment is appropriate "when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor[.]" *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991) (citations omitted). It is "designed to expedite the disposition of cases and avoid unnecessary trials when no genuine issues of material fact are raised[.]" *Id*. at 480 (citations omitted).

### b. **Discussion**

### 1. **There Is No Evidence that School Appellees Failed to Carry Out Their Discretionary Duties in Good Faith**.

In this case, the Appellants agree – and there is no evidence to the contrary – that Appellees' acts in investigating the situation and determining whether to report the concerns to outside authorities were discretionary. Instead, the Appellants argue that the Appellees failed to perform their discretionary duties in good faith.

Qualified official immunity protects public officers and employees who are sued in their individual capacity from damages liability. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) (citation omitted). Such immunity only applies to public officers or employees who make discretionary decisions, in good faith,

within the employee's scope of authority. *Id.* (citations omitted). In other words, qualified immunity protection extends to "good faith judgment calls made in a legally uncertain environment." *Id.* (citation omitted).

Thereafter, the plaintiff has the burden to establish "by direct or circumstantial evidence" that an act was performed in bad faith "[o]nce the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority[.]" *Id.* at 523 (citations omitted). The Kentucky Supreme Court has explained that "'bad faith' can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position[.]" *Id.* Moreover, in *Sloas*, the Kentucky Supreme Court stated that bad faith is evidenced by an officer's or employee's willful or malicious intent to harm the plaintiff acting "with a corrupt motive[.]" *Sloas*, 201 S.W.3d at 476-77.

> As the Court reasoned in *James v. Wilson*:
>
> [Q]ualified immunity can only be defeated if [the Appellees] knew or reasonably should have known that their actions, performed within the sphere of their official responsibility, would violate the appellants' constitutional rights or if they were motivated by a malicious intent to cause a deprivation of such rights or other injury.

95 S.W.3d 875, 909 (Ky. App. 2002).

-11-

In this case, the circuit court held that Doe did not meet her burden to show a violation of a constitutional, statutory, or other clearly established right and did not show that the Appellees willfully or maliciously intended to harm her. We agree that the Appellants have provided no evidence of any of the Appellees bullying Doe into silence to protect the school's image. Indeed, Harper, Ceglinski, and Bowland never met with or spoke to Doe regarding this matter.

Moreover, there is no evidence that anyone intended to harm Doe or directed any other person to try and keep her silent or hide the situation. The record indicates that it was Doe who wanted to maintain secrecy around what happened out of fear of her parents' reaction. The last communication to any Appellee from Doe before she went home on February 15, 2019, was that the act was consensual. Further, the Appellants have pointed to no evidence in the record that the Appellees otherwise investigated the situation in bad faith.

While the Appellants may disagree with how the Appellees managed the situation, the record indicates that the Appellees were attempting to figure out the proper way to handle a complex situation in a legally uncertain environment. No dispute of material facts exists regarding whether the Appellees acted with good faith in performing their discretionary duties, and they are entitled to qualified official immunity. We affirm the circuit court's judgment in this regard.

## 2.  The Video by Joshi Does Not Change the Circuit Court's Analysis.

Appellants next argue that the circuit court failed to consider the criminal act of videoing a minor in a sex act.  However, the criminal activity related to the video did not trigger a reporting requirement for the Appellees.  KRS 158.156(1) requires that:

> (1) Any employee of a school or a local board of education who knows or has reasonable cause to believe that a school student has been the victim of a violation of any felony offense specified in KRS Chapter 508 *committed by another student while on school premises, on school-sponsored transportation, or at a school-sponsored event* shall immediately cause an oral or written report to be made to the principal of the school attended by the victim.  The principal shall notify the parents, legal guardians, or other persons exercising custodial control or supervision of the student when the student is involved in an incident reportable under this section.

(Emphasis added.)

Here, the incident between Doe and Joshi occurred at Joshi's sister's apartment and not while on the school's premises, on school-sponsored transportation, or at a school-sponsored event.  Therefore, while Joshi's recording may have been criminal, it did not trigger a reporting requirement for the Appellees under KRS 158.156(1).

Additionally, the District's Employee Reports of Criminal Activity Policy, 09.2211, mirrors the reporting requirements of KRS 158.156 and states as follows:

> District employees who know or have reasonable cause to believe that a student has been the victim of a violation of any felony offense specified in KRS Chapter 508 (assault and related offenses) *committed by another student while on school premises, on school-sponsored transportation, or at a school-sponsored event* shall immediately cause an oral or written report to be made to the Principal of the school attended by the victim. The Principal shall notify the parents, legal guardians, or other persons exercising custodial control or supervision of the student when the student is involved in such an incident.

(Emphasis added.)

Again, the incident between Doe and Joshi occurred at Joshi's sister's apartment and not while on the school premises, on school-sponsored transportation, or at a school-sponsored event. As stated, while Joshi's recording may have been criminal, the specific facts of this case did not trigger a reporting requirement for the Appellees.

In their brief, while the Appellants have stated the law under KRS 531.335 regarding recording a minor during a sex act, they have pointed to no duty applicable to the Appellees. The Appellees did not see the video, and Joshi was neither charged nor convicted under KRS 531.335. The circuit court did not err.

**3. There Is No Evidence in the Record to Support a *Prima Facie* Case of Outrage.**

The Appellants' final argument merely discusses the elements of a claim for the tort of outrage but provides no evidence from the record to support a claim. Additionally, because we have determined that there was not enough evidence to find bad faith on any Appellees' part, the evidence is insufficient to meet the elements of the tort of outrage, which include "intentional or reckless" and "outrageous and intolerable" conduct. *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996) (citation omitted). We affirm the circuit court as to this alleged error.

## CONCLUSION

For the foregoing reasons, we affirm the McCracken Circuit Court.


ALL CONCUR.

BRIEFS FOR APPELLANTS:

Donna Thornton-Green
Paducah, Kentucky

BRIEF FOR APPELLEES
MCCRACKEN COUNTY SCHOOL
DISTRICT AND BOARD OF
EDUCATION, WILLIAM MICHAEL
CEGLINSKI, BRIAN HARPER,
JEREMY WATWOOD, WENDY
WATTS, MOLLY GOODMAN, AND
ELAINE KAYE:

Michael A. Owsley
Bowling Green, Kentucky

BRIEF FOR APPELLEE
STEPHANIE CARTER:

Jack N. Lackey, Jr.
Hopkinsville, Kentucky